May it please the Court. My name is Michelle Laird, representing appellants. The issue before this Court today is whether PAUMA is entitled to a preliminary injunction, relieving it from continuing to meet its contractual commitments that it agreed to in its 2004 amended compact with the State of California. A district court abuses its discretion in issuing a preliminary injunction if it applies the wrong standard for issuing that injunction or if it misapplies the law relating to the underlying claims. Here, the district court did both. With respect to the procedural aspects of its order, the order was in error because it was a status quo changing injunction and the court failed to apply a heightened scrutiny in determining whether or not to issue that injunction. Of course, the court must employ extreme caution in issuing a preliminary injunction to change the status quo because such an injunction is disfavored. A preliminary injunction is normally intended to preserve the status quo and the status quo is generally defined as the last uncontested status preceding the pending controversy. In this case, the status quo was an ongoing relationship between the State and the tribe under the amended compact for five plus years. The district court changed the status quo and failed to apply a heightened scrutiny in its analysis. To be fair, though, counsel, as I understand it, there has been a significant amount of litigation involving other tribes and the State over how many gaming licenses for Class III casino operations are available to sell to the tribe. Is that correct? That is true, Your Honor. And that number has changed from district court to Ninth Circuit. That is correct. I'm aware. It currently stands at a higher number than it stood or the parties understood it to be in 2004 when the amendment was entered. Is that right? It is a different number than the parties were advocating to the courts at that time, yes, Your Honor. And the tribe is now arguing mutual mistake of fact or mutual mistake of law as to the number of licenses that were available. Correct. Now, certainly that should not affect the standard that the court applies in issuing the injunction. Well, I guess what's unusual about this is that Judge Burns apparently had ruled in the San Pasqual case and was very familiar with the issues and had issued a ruling, what, a week before he issued the injunction? Exactly seven days before the hearing on the preliminary injunction, he issued his decision in the San Pasqual case. That's correct. So unlike the typical situation where an injunction sort of comes in and hits the district court cold with very little background or knowledge of what the dispute is about, here we have a judge who was well-versed in the legal and factual issues surrounding the request for injunction. He certainly was aware of the issues surrounding the determination of the number of licenses in the 1999 amended compact. And was the effect of the injunction to, in essence, restore the parties to the position they were in prior to the 2004 amendment? My understanding of the district court's injunction is that it only excised the payment that PAMA is required to make under the 2004 amended compact. So they're now paying at the rate that they were paying prior to 2004? Correct. That is correct. And there's been, although there was a request, the district court did not require payments into an escrow account of the district. That is also correct. It didn't, although PAMA offered to make the full amount of payments into an escrow account, and the State agreed that that would be appropriate as an alternative to not issuing the injunction at all, the court did not require that that payment be made. Okay. Now, as to the substantive aspects of the order, as the serious question test remains viable in this court under the Alliance for the Wild Rockies case, I'm going to focus on the misapprehension of the law related to the contract rescission claims. The underlying claims are based on, first, mistake of fact and mistake of law. The State avers that the district court erred in viewing uncertainty and doubt about the meaning of ambiguous terms in the 1999 compact as a mistake of fact or law, permitting rescission of the 2004 amended compact. The district court based its determination on, as you mentioned, its week-long order in San Francisco. However, since that time, since the preliminary injunction issued, this court has issued its decision in Calusa, and Calusa has interpreted the ambiguous license pool language to provide for more gaming device licenses than the State also said was authorized under its interpretation. But a mistake must be based on an objective existing fact or misapprehension of the law at the time of the contract. In this case, that would be June of 2004. It cannot be based on erroneous predictions about future events, including subsequent judicial resolutions of ambiguous language in the 1999 compact. Mistake of law or fact is not available under the circumstances, also because of PAMA's knowledge of the doubt with respect to the number of licenses available under the 1999 compact. And this is a matter of equity. There's no evidence that the State's interpretation was erroneous in light of the facts in existence at the time of the contract. The ambiguity in the contract has been in existence since 1999 when the first tribes signed the 1999 compact in September of that year. Can I ask you this? Yes, Your Honor. Does the analysis made by the district court, in your view, would it change since it did not have the benefit of alliance for Wild Rockies? I don't think. Would that change the analysis? No, Your Honor, I don't think it does because the court is still required to address all four of the winter factors. And in this case, it did not address either the public interest factor or the balance of equities factor. And those four, even under the new... He did talk about winters. I think, to be fair to Judge Burns, what he said was, because of my experience in San Pasqual, I'm going to give greater weight to the substantial likelihood of success on the merits here because I just ruled a week ago on the same question. And I'm looking at these other three factors, but I don't find that they're as significant as this one. He did do that, which is why I'm focusing on the success for the merits factor in my argument today. I just want to make sure I understand. So is your argument that he should have done more with regard to the three factors that he acknowledged but then didn't really talk about? Yes, Your Honor, because under the federal rules and under winter, he's required to make findings as to each of the different factors, and he did not do so. He simply made a conclusory statement that he's applying winter, and then he went forward on the success on the merits claim and on the irreparable harm issue but did not address the other two factors, which is exactly what was missing in winter. Now, continuing on the question of whether, even though there was no mistake, that mistake should be imparted to the state as a matter of equity. It should not in this case because both parties were aware of the ambiguity. PAMA was aware of the doubt, evidenced at a minimum, by its filing of an amicus brief in the RINCON action. The RINCON action included also a challenge to the license pull provisions. PAMA did not bargain for any kind of contingency in its compact that had not yet, in its 2004 compact, that had not yet been signed at the time the RINCON action was pending. PAMA chose to proceed with its amended compact despite its knowledge of the existence of RINCON and the possibility that it may result in a different interpretation of that ambiguous language. In addition, in the Perez decision, which is in the record, it demonstrates that the tribe voted to proceed with the amended compact at a time that it could have withdrawn, despite having no developer available or having no developer at that time. At that time, they were having the issues with respect to whether they were going to go forward with CSRS or not. And they knew that was an issue, and the tribal council voted to continue with the 2004 amended compact despite that knowledge and despite knowing that the $5.75 million payments would come due starting in January. On the failure of consideration claim, to be likely to prevail on that claim, PAMA must show that a subsequent event occurred, resulting in a material failure of performance by the state. PAMA relies on CALUSA, suggesting that because CALUSA held that there were more licenses available, that the new compact merely reconfers to them 950 machines that they already have the right to. But they did not have the right to those machines in 2004 when they entered into the compact. They only had a right to those machines if they were still a party to the 99 compact, and of course, after CALUSA issued the decision, which I believe there's also a motion for re-hearing pending in this court. So it's not quite final yet. It could change. PAMA also says that the failure of consideration is based on the August 2010 decision that was issued in the Wincott case, also by the Ninth Circuit. And in that case, the Ninth Circuit held that the state's offer of concessions could not serve as consideration for a new compact. However, Wincott only considered compact negotiations. It did not find terms in any existing amended compact void. And in referencing the amended compacts, such as the one we're discussing today, the court acknowledged that those tribes entering into those amended compacts agreed that the consideration was satisfactory to them, confirmed that the concessions were meaningful to the Department of the Interior, and in addition, the Department of the Interior approved those compacts. The bottom line relief that you want is what? The bottom line relief that we want today, Your Honor? A reversal of the preliminary injunction. Right. Potential clarification if the injunction stays in place, because there's some dispute I understand between the state and the tribe as to whether the court reinstated the entirety of the 1999 compact, or simply, as we claim, only the payment provisions of the 2004 compact have been enjoined. What is it that you want, the 2004 compact to be enforced? Yes, Your Honor. Ultimately, we're requesting the 2004 compact to be enforced for all payments. But that's not what you want from us at this point. No. At this point, we're simply seeking a reversal of the preliminary injunction. Okay. And I see that I have three minutes left. I'd like to reserve those. All right. Thank you. Thank you, Your Honor. Good morning. Cheryl Williams on behalf of FLE's Palmer Band of Michigan Indians. Six months ago, the parties were told by the district court that this case would be resolved in one month. The court found that the showing on the merits was so strong that the case that he wanted to give Palmer a final remedy as soon as possible instead of an injunction. But only once the state requested the opportunity to conduct discovery did the district court enjoin the compact payments because the delay in relief was going to cause irreparable harm to Palmer if the case continued longer than one month. What's the evidence of that, of the lack of an adequate remedy at law? Well, first of all, are you asking whether there is irreparable harm or whether there is lack of adequate remedy at law? Well, we cited several cases in our brief that say, that stand for the proposition that infringement on tribal self-government through the reduction in gaining income is an irreparable harm that cannot be measured in damages. And although Judge Burns indicated that restitution may be available in this case, there's no doubt that the state will argue that they have sovereign immunity to those claims because under the compact it says that the tribe can only sue for specific performance and equitable remedies, I believe. So it's very difficult to say that the tribe would be likely to obtain restitution. That's an open question. So I think it's likely that the tribe will not be able to ever recover the money that it pays under the amended compact fees, especially considering the state's debt situation right now. But instead of conducting any discovery, the state filed this appeal because it saw the way the case was heading and really wanted to find some way to delay that inevitable result. And as this court noted, there's a great deal of history and litigation behind this case, both in Colusa, Rincon, and San Pasqual, that the district court had analyzed at great length. Given this background, Judge Burns' decision to grant this injunction was well-reasoned and was well-supported by the record and the law. The district court did not abuse its discretion and correctly applied the winter four-part test. And just as a side note, before we get into the factors... Counsel, how do you address the argument from the state that he sort of gave the back of his hand to at least two of the four winter factors without really articulating good reasoning and weighing the four factors? Well, first I would say that he did weigh those factors. He didn't discuss them at great length in the order. They were discussed in the transcripts, and he said that all the four factors were satisfied under the winter standard. Just, I mean, inferentially, he did imply that judicial economy and resource conservation were interests here because the showing of the merits was so strong that it wasn't going to benefit the tribe or the state to drag this thing out and to deny the injunctive relief when it was so obvious that the tribe was entitled to this money and the state was not entitled to it. Judge Burns also said that these payments were an onerous burden on tribal members and the tribal services available to them. How do I square that with his statement at the hearing that he didn't really think irreparable harm had been shown? Well, I believe what he said was that there was no showing of imminent harm within the next 30 days, which was the time frame in which he originally thought he was going to resolve the case. But later, as I said, once the state said they wanted to conduct discovery and he thought that the case was going to continue longer, then he did see a showing of harm here, especially since the showing on the merits was so strong. Where do I find that? I mean, we have to look at the injunction as of the date that it was entered and the district court's consideration of the winters factors at that time. I can't go back and see what he said a month later, can I? No, no. Well, I'm talking about in the transcript, the state raised the issue that they wanted to conduct discovery, and it was at that point that the judge said, well, I'll tell you what I'm going to do. I'm going to give them some relief now, and then we're going to have a status conference in a month where we'll discuss whether the state actually has any actual evidence to refute the findings I've made today. I see. Okay, so I'm looking at the ER page 4, which is the transcript of the hearing starting on line 13. I don't see that there's an imminent need for me to do that. I've not been persuaded, notwithstanding the declaration, about the solvency of the tribe that things are going to change radically if this case is decided within the next month, which I intend to do. Right. Look, I'm a little confused as to the procedural status of this. The injunction was entered. We, this court, stayed it pending appeal, and I gather we expedited it in some fashion. And so what is the, but it's an appeal from a preliminary injunction. The injunction has been stayed. Are the proceedings still going forward in the district court? No. The district court said that it had lost jurisdiction once the appeal was filed. The state filed its motion to stay the injunction pending the appeal. We filed a motion for reconsideration, and that was granted, I believe, late August. Reconsideration of what? Reconsideration of the court's decision to stay the injunction. And that was actually based on. This court's? Yes. And that was based on an emergency motion that we filed showing that the California Gambling Control Commission had immediately demanded payment of all the fees that had been enjoined during the injunction thus far, or that the matter would be referred to the governor's office for further action. So we felt that the tribe's future gaming rights were in jeopardy, and that this was the conduct that we were likely to see in the future if the injunction was overturned or modified in some way that was detrimental to the tribe. So is the state of the affair right now that the tribe continues to make the payments under the 1999 compact? Yes. They continue to make the payments under the terms of the 99 compact. The order says that it is under the terms of the 99 compact. Even though the court has yet to rule on your challenge to the claim for rescission of the 2004 amendment? Right. He has not made any. And he doesn't think he can go forward with that ruling because he lost jurisdiction when the notice of appeal was filed? That's correct. Okay. But he did make detailed findings on the claim for rescission. I'm not sure that's true. We'll deal with that. He did make detailed findings on the rescission and mistake of that claim that both parties were mistaken as to the ability to obtain more licenses under the 1999 compact. He also expressly said that Kama was entitled to 2,000 licenses all along and that he didn't see anything in the record showing that Kama had any other intent in amending except to get to those 2,000 licenses. So that's why. Detailed findings on rescission. Is that at the top of page 5? Is that the detailed findings you're referring to or is that a subsequent order? I'm referring to the transcript. Yeah. Those are the detailed findings on the top of page 5 that you're referring to? I think they are sort of interspersed throughout. There are some on 4, 5, and 6. On 6 and 8. Those findings are fact? Yes. You think they are? I do. And based on what? What record did the findings of fact come from? Well, we submitted a great deal of evidence in connection with our injunction motion. We submitted declarations. We submitted the compact. We also submitted two expert reports and financial data. But wasn't he recounting what he had just done in San Pascual? I'm looking at the bottom of page 5 when he ticked off the things that Judge Jarvie was just asking you about. That's sure what it looks like. Well, I'm sure he was using his knowledge from San Pascual to find the findings of fact here. And I think he saw this as a primarily legal issue on the number of licenses available. But given the evidence that we presented, he didn't see any additional facts showing that PAMA had any other reason for amending, which is really the only difference from San Pascual is that the tribe had amended. And then on page 10 he says, in the meantime, the status quo will remain. Tell me why that's the status quo, to change the payments like this. I believe he was referring to the last uncontested status since PAMA was contesting the 2004 compact from its inception. So he was looking at the relationship between the parties under the 99 compact before the mistake happened. Although heightened scrutiny would not apply here, as this court recently said in Klein v. City of Laguna Beach, the same winter factors apply regardless of whether or not the status quo changes. So I don't believe heightened scrutiny was required in this instance. And even if it was, I think it was harmless error if it was not applied. As we cited in our brief, I believe, to Wyandotte Nation, where a similar injunction was affirmed, despite the district court's failure to apply the mandatory injunction standard. So would it be fair to say that your argument relies to some degree on having us look at his decision in San Pascual then read this transcript in concluding that he did consider all four factors, but this was just sort of shorthand or an abbreviated cross-reference to everything he said it was before? I would agree with that. And I think he even said that in the order that we requested that this court take judicial notice of, and that was granted, where he said that there was no need to include the San Pascual order as part of the record, but he did rely on it heavily in reaching his conclusions in this case. But I also wanted to talk a little bit about Winter itself. That is a completely different case here. Excuse me. The facts of that case were completely in opposite to this case here. The only similarity is that the orders were both short, and we've seen several cases before this court... I'm sorry, which case are you talking about? Winter? No, you go Winter. But the old? I'm not following your argument. I mean, we look at Winters in order to determine what law to apply to the application for injunctive relief, right? Right. And that applies despite the fact that in Winters we were dealing with marine mammals and sonar exercises versus... Right, but my point is that the error that was found ought to have been committed by the district courts. I mean, there the error was not that the order was short. It was that the district court failed to consider evidence of the harm to the Navy and the public in balancing the harms. There was no evidence of specific harm to sea mammals over the 40-year history of sonar training, as opposed to detailed evidence presented by Naval officers of the harm that would result from the injunction. So they really had only shown a possibility of harm instead of a likelihood of harm. So I don't think that the result would have come out differently even if the order had been more detailed. So your argument is that on the likelihood of harm prong, he was following Winters in his statements that, although I don't see any imminent harm in the next 30 days, there is harm if this thing goes longer than 30 days. Right. He specifically said in the order that the payments were an onerous burden and perhaps an unsustainable one, and it was an onerous burden on the tribal members as well and the services that were provided to them. And we have provided law that shows that such an infringement on tribal sovereignty equates to imminent harm. I'm sorry, irreparable harm. But this court has recently affirmed an injunction that had a similar order that was very brief. We cited Johnson v. Couturier in our Rule 28J letter. There the order did not discuss irreparable harm, but this court still affirmed the injunction because there was evidence in the record that there was a likelihood of harm that would result without the injunction. I'm sorry, you may have answered this, but there's an appeal on the San Pasquale case? Yes, there is. And what's the status of that? I believe it's pending. I don't believe it's even been briefed yet, although the state might be able to tell me a little bit more about it. It was just docketed in May. Okay. If I could talk a little bit about the rescission claims. Now, first of all, under Donovan v. RRL, there's a standard for unilateral mistake, even assuming that only common was mistaken that says you're entitled to rescission for mistake if the other party knew or caused the mistake. And here that's exactly the situation that we're looking at, which also reminds me that Judge Burns did discuss the balancing of the equities between the parties because the state drafted the provision that caused the mistake. So it was equitable to hold the state to its terms as opposed to blaming common for the mistake. And also the four factors that are set forth in Donovan, which only apply if the other party didn't cause the mistake, are also applicable here, that there was a mistake regarding a basic assumption upon which the contract was based, the mistake had a material effect on the exchange of the performance, and it was reasonable to allocate the mistake to the state as drafter of the license pool provision, and enforcement of the contract would be unconscionable. Now, here the state says it's reasonable to allocate the risk to PAMA, but when you look at the cases that specifically address this issue, courts typically apply Restatement Section 154 to determine whether a party's failure to discover or consider facts that would have prevented the mistake barred the rescission claim. And those cases are Donovan v. RRL, even the state-sided case YTY Industries, Van Meter v. Bentz, Palo Alto Town and Country v. Nutanza. And when we look at those factors, you have – Okay, your time has expired if you want to wrap up briefly. Okay. Those three factors say that the risk was allocated by contract. There's no evidence that the risk was included into this contract. Even Guffey v. Times Senior says that there was no evidence in that case that that happened and that the party was aware it had limited facts or treated them as insufficient. And the cases say that that cannot be done when it's the other party's fault, that you relied on the other party's misstatement. Thank you. Thank you. Thank you. Addressing the winner factors again, certainly the issue of the likelihood of success on the merits was addressed. We do not have any qualms with that. However, the balance of equities were not discussed either in the judge's order or during the hearing itself. Whether an injunction would be in the public interest was not addressed either in the order or during the hearing. And on irreparable harm, the court really took a 180 change from the hearing and then two days later issuing its order that suddenly there was some showing of irreparable harm based on the exact same evidence. Well, unless we read the irreparable harm finding as being limited to the expected 30-day time period, in essence what he thought he was doing was entering temporary injunctive relief because he intended to rule very quickly. That may have been what his intent was, but he issued a preliminary injunction. And the harm that he recognized was not imminent. It was in the future. In fact, he even says in the order he issues, he says it's likely to impose an onerous and perhaps unsustainable burden on PAMA. He's talking about future events. And the preliminary injunction has to be issued based on an imminent showing of irreparable harm in order to be valid. I just want to quickly distinguish the Klein case that counsel mentioned. The winter factors certainly are applied regardless of whether there's heightened scrutiny or not. We agree with that. However, it doesn't change the standard for review of an injunction seeking a change in the status quo. That law remains valid, and it still requires a heightened scrutiny and extreme caution applied to such requests. And finally, I can update the Court on the status of the various cases, if you're interested. I do know that San Francisco, first of all, San Francisco was a summary judgment motion. It was not a preliminary injunction. That has been docketed in this Court. The Rincon decision, which was also in the Southern District, and also determined the number of licenses came up with even a different number. I'm not sure if the judgment has been entered or not. But I can assure you that the State will appeal that as well. The Colusa case has been determined in this Court. That determined the number of licenses under the 1999 Compact, and there's a pending motion for re-hearing in that case. And I believe those are all of the cases that I'm aware of other than this one that asserts some sort of challenge to the ambiguous language in the 1999 Compact. Are the issues in San Pasquale essentially the same as in this case? No, no. Because San Pasquale is a tribe that is currently under the 1999 Compact. This is the only case that exists where there's a tribe that's seeking rescission of an amended compact based on these later determinations by the Court that the 1999 Compact had more licenses available. Okay. And that's all I have. If there's any further questions, Your Honors. There don't appear to be any. Thank you. Thank you very much. Case just argued and submitted for decision.
judges: Jarvey, Schroeder, Tallman